

FILED & ENTERED

MAY 08 2023

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY llewis      DEPUTY CLERK

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>SWING HOUSE REHEARSAL AND RECORDING, INC.,<br><br>Debtor. | Case No. 2:16-bk-24758-RK<br><br>Chapter 11<br><br>**SEPARATE STATEMENT OF DECISION ON ORDER FOLLOWING HEARING ON ORDER TO SHOW CAUSE REGARDING DISMISSAL OF CHAPTER 11 CASE, DISMISSING CASE AND CLOSING CASE**<br><br>Hearing<br>Date:       April 25, 2023<br>Time:      1:30 p.m.<br>Place:     Courtroom 1675<br>              Roybal Federal Building<br>              255 East Temple Street<br>              Los Angeles, California  90012 |

On April 25, 2023, this Chapter 11 bankruptcy case came on for hearing before the undersigned United States Bankruptcy Judge on the court's order to show cause directing Debtor Swing House Rehearsal and Recording, Inc., to show cause regarding dismissal of this case.  Steven R. Fox, The Fox Law Corporation, Inc., appeared for Debtor Swing House Rehearsal and Recording,

1  Inc.  Kurt Ramlo, of the law firm of Levene, Neale, Bender, Yoo & Golubchik,
2  L.L.P., appeared for the firm as an interested party.  Andrew Smyth, of the law
3  firm of SW Symth L.L.P., appeared for Creditor Philip Jaurigui.
4       On March 30, 2023, the court issued an order to show cause why this
5  Chapter 11 bankruptcy case should not be dismissed for material default by the
6  debtor with respect to a confirmed plan pursuant to 11 U.S.C. § 1129(b)(4)(N) or
7  for cause under any other applicable provision of Section 1112 of the Bankruptcy
8  Code, 11 U.S.C.  Docket No. 740.  *See* 11 U.S.C. § 105(a) ("The court may issue
9  any order, process, or judgment that is necessary or appropriate to carry out the
10  provisions of this title. . . .")  The order to show cause provided that a hearing on
11  the order to show cause would be conducted on April 25, 2023 and that any
12  response to the order to show cause must be filed and served 14 days before
13  hearing, or by April 11, 2023.  On March 31, 2023, pursuant to the order to show
14  cause, the Debtor served copies of the order to show cause on all creditors and
15  parties entitled to notice as set forth in the Debtor's proof of service.  Docket Nos.
16  741 and 742; *see also,* Federal Rule of Bankruptcy Procedure 2002(a)(5)
17  (providing for 21 days' notice of hearing on dismissal of a Chapter 11
18  reorganization case to all parties in interest).
19       In response to the court's order to show cause re: dismissal, the Debtor
20  filed the declarations of Jonathan Mover and Genoveva Winsen. Docket No. 745.
21  Mover is the Debtor's chief executive officer and chair of the board of directors,
22  and Winsen is the Debtor's chief financial officer.  *Id.*  Mover is also the holder of
23  an allowed secured claim filed in the amount of $165,951 and the holder of an
24  allowed general unsecured claim filed in the amount of $306,615.  Claims
25  Register, Claims Nos. 7 and 8.
26       Only one interested party, Levene, Neale, Bender, Yoo & Golubchik, L.L.P.
27  (LNYBG), Debtor's former counsel, on April 11, 2023, filed a timely written
28  response to the order to show cause.  Docket No. 746.  In its response, LNYBG

1  did not oppose dismissal of the case per se, but indicated that if the case were
2  dismissed or converted to Chapter 7, the firm and its attorney, Kurt Ramlo, be
3  relieved and discharged from their duties under the court's postconfirmation
4  orders to hold in their custody an iPhone cell phone and a MacBook personal
5  computer owned by the Debtor pending further order of the court and that certain
6  orders entered in the bankruptcy case relating to its fee application and
7  resolution of an adversary proceeding brought by another creditor, 7175 WB,
8  LLC, seeking relief against it should not be affected by dismissal or conversion of
9  the case pursuant to 11 U.S.C. § 349.
10          At the hearing, Philip Jaurigui, appeared by counsel, Andrew Smyth, but
11 did not file a timely written response to the order to show cause by the deadline
12 of April 11, 2023 set in the order to show cause.  Smyth stated that he was
13 Jaurigui's counsel, but had not been served with the order to show cause.
14 However, Leonard Pena is Jaurigui's counsel of record in this bankruptcy case,
15 and both Pena and Jaurigui were served by Debtor with copies of the order to
16 show cause on March 31, 2023 as shown on Debtor's proof of service of the
17 order to show cause.  Docket Nos. 741 and 742.  Smyth has not entered an
18 appearance as Jaurigui's counsel in this case, though he substituted in for Pena
19 in the adversary proceeding in Jaurigui's personal bankruptcy case as appellate
20 counsel handling Jaurigui's appeal of the court's judgment in that adversary
21 proceeding determining that the debt he owes Mover is nondischargeable.  *See*
22 Notice of Appeal, *Mover v. Jaurigui (In re Jaurigui),* Bankruptcy No. 2:16-bk-
23 24760-RK Chapter 7, Adv. No. 2:18-ap-01351-RK, filed on October 28, 2022.
24 Jaurigui holds an allowed general unsecured claim in the amount of $225,000.
25 *See* Plan Confirmation Order, Docket No. 594, filed November 2, 2018, at 13.
26 Jaurigui did not file a timely response to the order to show cause regarding
27 dismissal of the case and did not offer any evidence in response to the order to
28 show cause, and the court may disregard Jaurigui's oral opposition to the order

to show cause regarding dismissal. *See* Local Bankruptcy Rule 9013-1(h) (failure to timely file required documents in opposition to a motion may be deemed consent to the granting of the motion).

At the hearing, the court heard from the parties appearing and orally ruled that it found cause for relief under 11 U.S.C. § 1112(b)(1) and (4)(N), granting relief was in the best interests of creditors and that dismissal was the best form of relief in the interests of creditors and the estate. *See, In re Baroni*, 36 F.4th 958 (9th Cir. 2022). Pursuant to the court's direction, on May 1, 2023, the Debtor lodged a proposed order consistent with the court's oral ruling, which has been approved as to form by counsel for LNBYG. Docket No. 747. Although the court stated its reasons for its oral ruling, the court now sets forth its reasons in writing in this separate statement of decision.

As recently noted by the Ninth Circuit in *In re Baroni*,

> The standard for converting a Chapter 11 case to Chapter 7 [or dismissing the case] is set out in 11 U.S.C. § 1112. This statute provides that the bankruptcy court "shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause." 11 U.S.C. § 1112(b)(1). However, even if cause is established, Section 1112(b)(2) prohibits a bankruptcy court from granting relief under Section 1112(b)(1) if the bankruptcy "court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes [one of two enumerated circumstances]." Id. § 1112(b)(2) (emphasis added). Thus, depending on the arguments advanced by the parties, there are three primary inquiries: (1) whether cause exists for granting relief under Section 1112(b)(1); (2) whether granting relief is in the creditors' and the estate's best interests; and (3) if so, which form of relief best serves the creditors' and the estate's interests. We address each in turn.

36 F.4th at 965.

Consistent with *Baroni,* the court has considered the three primary inquiries whether this case should be dismissed pursuant to 11 U.S.C. §

1112(b)(1): (1) whether cause exists for granting relief under Section 1112(b)(1); (2) whether granting relief is in the creditors' and the estate's best interests; and (3) if so, which form of relief best serves the creditors' and the estate's interests. As in *Baroni,* cause under 11 U.S.C. § 1112(b)(1) includes a "material default by the debtor with respect to a confirmed plan," 11 U.S.C. § 1112(b)(4)(N), which may be shown by a failure to make required payments under a confirmed reorganization plan. *See, In re Baroni,* 36 F.4th at 965, *citing and quoting*, *AMC Mortg. Co. v. Tenn. Dep't of Rev. (In re AMC Mortg. Co., Inc.),* 213 F.3d 917, 921 (6th Cir. 2000) ("[a] failure to make a payment required under the plan is a material default and is cause for dismissal.") and *Collier on Bankruptcy* ¶ 1112.04[6][n] ("Although the [Bankruptcy] Code does not define the term material, the failure to make payments when due under the plan can constitute a material default.").

The uncontroverted evidence in the record as set forth in the Mover and Winsen declarations shows that the Debtor has not made any payments to creditors under its confirmed plan since March 2020. Debtor's fourth amended reorganization plan filed on September 5, 2018 (Docket No. 549) was modified and confirmed by an order of the court on November 2, 2018 (Docket No. 594). Although the plan was confirmed four and a half years ago, the Debtor has been in default in making monthly plan payments for over three years as reflected on the plan payment tracking chart attached to the Winsen declaration filed in support of the order to show cause. Winsen Declaration, Exhibit B, Docket No. 745 at 13. According to the Mover and Winsen declarations, the Debtor's business in the live music entertainment industry suffered due to the Covid-19 pandemic and has not recovered despite improvement in public health conditions. Mover and Winsen Declarations, Docket No. 745 at 3 and 5. As stated in the Mover declaration, "SH [Swing House, or the Debtor] provides comprehensive rehearsal, sound stages, staffing services, live production events

and rental services for the music industry from its Atwater Village facility located at 3229 Casitas Avenue, Los Angeles, California ('Casitas')." Mover Declaration, Docket No. 745 at 2. According to the Mover and Winsen declarations, the Debtor is not likely to recover and resume making plan payments because it has not been able to rebuild its client relationships and lacks sufficient capital to build such relationships to bring it back to profitability as the live music entertainment industry has not recovered from the Covid-19 pandemic. Mover and Winsen Declarations, Docket No. 745 at 3-8. As explained in the Mover declaration,

* * *

> 6. In March 2020 the state, county and city placed emergency orders due to the Covid virus, requiring the closure all of non-essential businesses; SH [Swing House, or the Debtor] was not considered an essential business.
>
> 7. Additionally, SH's clients immediately halted the work they were performing inside the facility and ceased using SH even once the lockdowns lessened restrictions or their contracts expired during the government-imposed lockdowns.
>
> 8. SH is in an industry well known to be amongst the hardest hit, the "entertainment industry", since restrictions on things such as concerts and all entertainment productions lasted much longer and were more stringent with safety protocols than, for example, restaurants.
>
> 9. Since the pandemic-related shutdowns, SH has failed to rebuild client relationships to bring the company back to profitability. Annualized revenues during the remainder of 2020 and during 2021 through 2022 have averaged 10% or less of pre-Covid levels.

Mover Declaration, Docket No. 745 at 2-3

As reflected in the Debtor's Chapter 11 post-confirmation report for the calendar quarter ending December 31, 2022, Docket No. 738, filed on February 20, 2023,[1] the Debtor has paid only 26% of the general unsecured claims and 18% of secured claims that it is supposed to pay in seven years from the

---

[1] The court takes judicial notice of the Debtor's post-confirmation report filed in this bankruptcy case pursuant to Federal Rule of Evidence 201.

-6-

effective date on November 19, 2018, which was the first court day fourteen days after the date of entry of the confirmation order. *See* Plan, Docket No. 549 at 4-14 (setting forth payment completion in seven years); Plan Confirmation Order, Docket No. 594, at 12.

Regarding materiality of a plan payment default, the Ninth Circuit in *Baroni* stated:

> However, that does not mean that every missed payment is a material default. There can be situations, for example, where the defaulted payment or the period of default is so minimal in context that it cannot fairly be characterized as a material default. As a general matter, "material" means something that is "significant" or "essential." BLACK'S LAW DICTIONARY (11th ed. 2019). Furthermore, a Chapter 11 plan is "construed basically as a contract." *Hillis Motors, Inc. v. Haw. Auto. Dealers' Ass'n,* 997 F.2d 581, 588 (9th Cir. 1993). And under general contract principles, whether a breach is material depends on the "extent" of the deprivation from the benefit reasonably expected. Restatement (Second) of Contracts § 241 (Am. L. Inst. 1981). Therefore, factors relevant to determining whether missed payments are a material default of the plan include the number of missed payments, the number of aggrieved creditors, and how long the default occurred.

36 F.4th at 967. The extent and duration of the plan payment defaults in light of the Debtor's continuing inability to make plan payments demonstrates that its default is material because the primary creditors of the estate, the secured creditors, James D'Addario, D'Addario & Co., and Mover, and all of the general unsecured creditors, are adversely affected by the long duration of the plan payment default over three years as small percentages have been paid on their claims on a confirmed plan now effective for four and one-half years that was supposed to be completed in seven years.

Even if the bankruptcy court finds that cause exists for conversion or dismissal of a Chapter 11 case, the Ninth Circuit in *Baroni* stated that the bankruptcy court must also consider whether such relief is in the best interests of creditors and the estate, and when raised, must also consider whether there are

unusual circumstances that indicate that the interests of creditors and the estate are best served by not granting relief and allowing the case to continue:

> Before the bankruptcy court can grant conversion [or dismissal], it must consider whether this relief, as opposed to some other remedy, is in best interests of the creditors and the estate. 11 U.S.C. § 1112(b)(1). And when raised, it must also consider whether there are unusual circumstances that indicate that the creditors' and the estate's interests are best served by not granting relief under Section 1112(b) and allowing the Chapter 11 proceeding to continue. Id. § 1112(b)(2). In analyzing these issues, the bankruptcy court "must consider the interests of all of the creditors." *Shulkin Hutton, Inc., P.S. v. Treiger (In re Owens),* 552 F.3d 958, 961 (9th Cir. 2009) (citation omitted). Baroni has argued that there are unusual circumstances counseling against awarding Section 1112(b) relief. Therefore, we address that question first and then we address whether the form of relief the bankruptcy court granted was within its discretion.

36 F.4th at 968.

The court has considered whether granting relief is in the best interests of creditors and the estate. (Technically speaking, since the confirmed reorganization plan vested property of the estate in the reorganized debtor, the estate no longer exists, and the court does not consider the interests of the estate as opposed to the creditors. *See Hillis Motors, Inc. v Hawaii Automobile Dealers' Association,* 997 F.2d 581, 587 and n. 9 (9th Cir. 1993) (stating normally once a Chapter 11 reorganization plan is confirmed, the estate ceases to exist), *citing inter alia,* 11 U.S.C. § 1141(b) ("Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."); Plan, Docket No. 549 and Plan Confirmation Order, Docket No. 594 (plan and confirmation order did not otherwise provide that property of the estate did not vest in the reorganized debtor)). As set forth in the Mover and Winsen declarations and the balance sheet for the Debtor as of March 31, 2023 prepared by Winsen attached to her declaration, the evidence indicates that the Debtor has assets listed at $2.4 million, much of which consists of leasehold improvements valued at $ 2,781,867. Mover and Winsen

Declarations, Docket No. 745 and Exhibit A attached thereto. As stated in the Winsen declaration, the liquidation value of the leasehold improvements is zero as those assets belong to the landlord. *Id.* Debtor's balance sheet indicates that the Debtor's liabilities are $2.7 million, that is, its liabilities exceed its assets by $341,000. *Id.*

As stated in the Mover and Winsen declarations and in the attached balance sheet for Debtor, Debtor's assets other than the leasehold improvements consist of its rental equipment with a book value of $200,000, the unexpired lease assumed by the debtor, $45,000 in security deposits as reflected on the balance sheet, five prepetition music-related contracts assumed under the plan, and its pending lawsuit against the landlord for breach of lease covenants. Mover and Winsen Declarations and Exhibit A attached thereto, Docket No. 745. In the opinion of the Debtor's CEO, Mover, as stated in his declaration, the liquidation value of the rental equipment is approximately $20,000 to $40,000 after fees and expenses of liquidation through auction. Mover Declaration, Docket No. 745 at 4. Debtor through the Winsen declaration values the liquidation value of the lease at zero as Debtor is involved in litigation with the landlord. Mover and Winsen Declarations, Docket No. 745 at 6-7. As stated in the Mover and Winsen declarations, Debtor values the five assumed prepetition music-related contracts as having no liquidation value as the contracts have not generated any income to the Debtor since assumption in November 2018. *Id.* at 7. Debtor's pending lawsuit against the landlord would have to be prosecuted for a recovery, and according to Winsen in her declaration, the trial in the lawsuit is set for sometime in 2024. *Id.*

Based on this evidence, the court finds that liquidation of the Debtor's assets through conversion of the case to Chapter 7 or continuation of the case with appointment of a Chapter 11 trustee would result in marginal recovery to the creditors. The liquidation value of the Debtor's assets would be the $20,000 to

$40,000 from liquidation of the rental equipment and $45,000 in the rental deposits that would probably have to be litigated in the lawsuit with the landlord, which is pending. Debtor has a potential recovery in the Debtor's lawsuit against its landlord, but funds will be needed to prosecute the lawsuit. However, according to the Debtor's balance sheet, Debtor only has current assets of $25,045.87, consisting of $6,729.92 in bank accounts and $18,319.95 in accounts receivable. Exhibit A to Mover and Winsen Declarations, Docket No. 745. As stated in the Mover and Winsen declarations, Debtor has been only able to operate and generate these current assets only because Mover and Winsen have foregone nearly all of their salary which they are not willing to do on a continuing basis, Mover lent the Debtor $140,000 and the creditors agreed to postpone receipt of plan payments. *See generally* Mover and Winsen Declarations, Docket No. 745. As stated in the Debtor's balance sheet, the Debtor owes over $1 million to its secured creditors and $275,000 to its unsecured creditors under the plan, any recoverable amount from the assets that could be liquidated after administrative expenses from conversion to Chapter 7 or appointment of a Chapter 11 trustee would be minimal at best. *Id.*

Based on these circumstances, there would not be much benefit in converting the case to Chapter 7 or appointing a Chapter 11 trustee, and dismissal would be in the best interests of creditors to minimize the expenses of further bankruptcy case administration because Debtor's business has not recovered profitability, potential recovery from liquidation of remaining assets would be minimal and there are little available funds to prosecute the Debtor's lawsuit against its landlord, which might result in a potential recovery.

The court finds that dismissal is in the best interests of creditors as it appears that the expenses of further administration in a case converted to Chapter 7 or with an appointment of a Chapter 11 trustee would be prohibitive, given the minimal value of assets which could be liquidated to continue the case

and pay creditors, and the cost of litigation in prosecuting the lawsuit against the landlord.  The court also notes that there was no timely written opposition by a creditor to dismissal of the case based on cause filed in response to the order to show cause.

Upon dismissal, the creditors can pursue their own contractual or other remedies to enforce the Debtor's plan obligations to them outside of bankruptcy. *See In re Oakhurst Lodge, Inc.,* 582 B.R. 784, 792 (Bankr. S.D. Cal. 2018).  As stated in the case of *In re Oakhurst Lodge, Inc.,* "Confirmed plans resemble consent decrees, which have characteristics of both a contract and a judgment." *Id.* at 792, *citing, Hillis Motors, Inc. v. Hawaii Automobile Dealers' Association,* 997 F.2d at 588 (*citing Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 378, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992)).  As the Bankruptcy Appellate Panel of the Ninth Circuit has stated, "Confirmation of a plan of reorganization constitutes a final judgment in bankruptcy proceedings."  *Heritage Hotel Partnership I v. Valley Bank of Nevada (In re Heritage Hotel Partnership I),* 160 B.R. 374, 377 (9th Cir. BAP 1993), *citing inter alia, Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938).  The Bankruptcy Appellate Panel further observed in *Heritage Hotel Partnership I*:  "Like final judgments, confirmed plans of reorganization are binding on all parties, and issues that could have been raised pertaining to such plans are barred by res judicata." *Id., citing and quoting,* J.S. Gilbert, Substantive Consolidation in Bankruptcy: A Primer, 43 Vand.L.Rev. 207, 239 (1990). As such, the court in *Oakhurst Lodge* further stated that *"*even dismissal of a chapter 11 case does not vacate the confirmation order." 582 B.R. at 792, *citing, Matter of Depew*, 115 B.R. 965, 967–68 (Bankr. N.D. Ind. 1989) ("dismissal does not revoke debtors' discharge[,] and their obligations to creditors, as set forth in the confirmed plan, remain unaltered."); *In re Space Bldg. Corp.,* 206 B.R. 269, 274 (D. Mass. 1996) ("[C]ourts which have considered whether dismissal or conversion of a Chapter 11 case revokes a confirmed Plan,

consistently have determined that it does not."); *U.S. v. Ramirez*, 291 B.R. 386, 391–92 (N.D. Tex. 2002); *Am. Bank and Trust Co. v. United States ex rel. Internal Revenue Service (In re Barton Indus., Inc.),* 159 B.R. 954, 957–60 (Bankr. W.D. Okla. 1993).

Accordingly, the court finds that the evidence, which is uncontroverted, supports relief under 11 U.S.C. §1112(b)(1) and (4)(N) based on a material default under the plan, that relief is in the best interests of creditors and that dismissal of the case is the best form of relief in the interests of creditors, and the court will dismiss the case and approve the form of order for dismissal lodged by the Debtor.

IT IS SO ORDERED.

###

Date: May 8, 2023

Robert Kwan
United States Bankruptcy Judge